**IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF VIRGINIA
ROANOKE DIVISION**

| | |
|---|---|
| **JOSHUA L. BARRICKS,** ) | |
| ) | |
| **Plaintiff,** ) | **Civil Action No. 7:23-cv-00551** |
| ) | |
| **v.** ) | |
| ) | **JURY TRIAL DEMANDED** |
| **JAMES R. WRIGHT,** ) | |
| ) | |
| **Defendant.** ) | |

## AMENDED COMPLAINT

COMES NOW Plaintiff Joshua L. Barricks ("Mr. Barricks"), by and through counsel, and files this Amended Complaint against James R. Wright ("Defendant").

### I.   Introduction

1.     This case demonstrates the consequences that result from horrific acts of police brutality and abuse of power. Defendant accused Mr. Barricks of skateboarding and public intoxication and then chased him through a convenience store. Mr. Barricks attempted to exit the store, but he ran into a locked door. Mr. Barricks attempted to surrender to police custody by placing his hands in the air and kneeling to the ground. Despite Mr. Barricks's acts of complete submission to police custody, Defendant failed to handcuff him. Instead, Defendant slammed Mr. Barricks's body to the concrete floor, pushed his skull into the ground, and punched him in the head at least twelve times. Defendant's excessive force left Mr. Barricks with debilitating injuries, including, but not limited to: multiple facial fractures, multiple jaw fractures, and a brain bleed.

### II.   Parties

2.     At all times relevant hereto, Plaintiff Joshua Lair Barricks ("Mr. Barricks") was a citizen of the Commonwealth of Virginia.

GENTRY LOCKE Attorneys

ROANOKE, VIRGINIA

20662/1/11513568v1

3.     At all times relevant hereto, Defendant James R. Wright ("Defendant") was a citizen of the Commonwealth of Virginia, residing at 1311 Cherokee Trail, Covington, Virginia 24426.

4.     At all times relevant hereto, Defendant has used the alias "Bobby Wright."

5.     At all times relevant hereto, Defendant was a deputy employed by the Alleghany County Sheriff's Office and was acting under the color of law.

### III.     Jurisdiction & Venue

6.     This Court has subject matter jurisdiction under 28 U.S.C. § 1331 because this case implicates a federal question.

7.     This Court has supplemental jurisdiction over the state law battery claim pursuant to 28 U.S.C. § 1367(a).

8.     This Court has personal jurisdiction over Defendant as he is a resident and citizen of Virginia and otherwise has sufficient minimum contacts with the Commonwealth of Virginia.

9.     Venue is proper in this judicial district under 28 U.S.C. § 1391(b)(2) because a substantial part of the events or omissions giving rise to Mr. Barricks's claims occurred in this judicial district.

### IV.     Facts

**A.     <u>The Pretextual Stop</u>**

10.     On March 30, 2022, at approximately 9:35 p.m., Mr. Barricks skateboarded to the Covington Farm & Fuel store ("Farm & Fuel"), which is located at 121 North Alleghany Avenue, Covington, Virginia 24426.

11.     Defendant, while driving a marked sport utility vehicle owned and operated by the Alleghany County Sheriff's Office, noticed that Mr. Barricks was skateboarding down the road toward the Farm & Fuel.

GENTRY LOCKE
Attorneys

ROANOKE, VIRGINIA

2

12.     Defendant's vehicle was equipped with a dashboard camera, which was recording when he noticed Mr. Barricks skateboarding down the road.

13.     Defendant had an antagonistic history with Mr. Barricks.

14.     Before even speaking to Mr. Barricks, Defendant was agitated with Mr. Barricks.

15.     Defendant can be heard on the dashboard camera footage speaking to a female over the phone and stating "This motherfucker is skating down the goddamn road."

16.     Defendant then turned around his patrol vehicle, stated "Where the fuck he go? There he is," and started following Mr. Barricks.

17.     Defendant followed Mr. Barricks to Farm & Fuel, where Defendant parked his patrol vehicle close to store's entrance and directly in front of Mr. Barricks.

18.     Defendant exited his vehicle and approached Mr. Barricks, who was near Farm & Fuel's entrance.

19.     Defendant asked Mr. Barricks: "What are you doin'?"

20.     Mr. Barricks replied "Skating."

21.     Defendant stated "Yeah, I know. You can't skate down the middle of the road."

22.     As shown in the below screenshot, taken from Defendant's dashboard camera footage, Mr. Barricks was not skating in the middle of the road.

GENTRY LOCKE
Attorneys
ROANOKE, VIRGINIA

3



23.     Mr. Barricks was skateboarding on the right shoulder of the road with the flow of traffic as permitted by Virginia law.

24.     After the brief conversation where Defendant accused Mr. Barricks of skating down the "middle of the road," Mr. Barricks began walking slowly toward the entrance of Farm & Fuel.

25.     As Mr. Barricks walked toward the entrance of Farm & Fuel, Defendant yelled at Mr. Barricks "Stop!"

26.     When Defendant told Mr. Barricks "Stop!" he was detaining Mr. Barricks.

27.     At the time Defendant told Mr. Barricks "Stop!" he had no reason whatsoever to believe that Mr. Barricks had been or was publicly intoxicated.

28.     Just moments prior to commanding Mr. Barricks to "Stop!" Defendant had observed Mr. Barricks skateboard down a hill before arriving in front of Farm & Fuel's entrance.

29.     Skateboarding requires a significant amount of balance and coordination.

30.     Skateboarding is an activity that would be difficult for an intoxicated individual to perform.

GENTRY LOCKE
Attorneys
ROANOKE, VIRGINIA

4

31.     When Defendant told Mr. Barricks to "Stop!" he had no probable cause or reasonable suspicion to believe that Mr. Barricks had committed or was committing a crime.

32.     Skateboarding on a road is not a violation of Virginia Code § 46.2-932.

33.     Virginia Code § 46.2-932 prohibits the use of a "toy vehicle" on certain roadways.

34.     Virginia Code § 46.2-100 specifically states that "toy vehicle" does not include motorized or nonmotorized skateboards.

35.     Skateboarding down a road is not illegal under Virginia law and does not constitute a crime.

36.     Defendant's detention of Mr. Barricks in the first place was unconstitutional and in violation of the Fourth Amendment.

37.     Defendant's detention of Mr. Barricks was simply a pretextual stop to investigate Defendant's unsupported hunch that Mr. Barricks may have been committing a crime or possessing drugs.

38.     Despite Defendant's unconstitutional detention, Mr. Barricks obeyed Defendant's command to "Stop!" by sitting on the ground with his back against the exterior wall of Farm & Fuel.

**B.     The Beating & Its Aftermath**

39.     Defendant was wearing a bodycam, which captured Mr. Barricks' interactions with Defendant.

40.     Defendant, after conducting the pretextual stop and further investigating his unsupported hunch, accused Mr. Barricks of "public intoxication."

41.     As Mr. Barricks lifted himself off of the ground, Defendant reached for and grabbed Barricks' right arm.

42.     Mr. Barricks then ran through the Farm & Fuel store until he approached a locked door in the "seed room" of Farm & Fuel.

43.     Farm & Fuel's seed room was equipped with a surveillance camera, which captured the entire incident.

44.     Below is a screenshot from the surveillance camera showing Mr. Barricks attempting to open the locked door.



45.     After realizing the door was locked, Mr. Barricks surrendered by placing his hands in the air and placing both of his knees on the ground.

GENTRY LOCKE
Attorneys
ROANOKE, VIRGINIA

6





46.     In the United States, a suspect placing his or her hands in the air is a universal sign

of surrendering to police custody.

47.    Upon information and belief, as a law enforcement officer, Defendant knew and understood that Mr. Barricks was surrendering to police custody when he placed his hands in the air and kneeled to the ground.



48.    After Mr. Barricks surrendered, Defendant approached Mr. Barricks from behind and placed Mr. Barricks's hands behind his back.





49.     Defendant did not handcuff Mr. Barricks when his hands were behind his back,

although Defendant had the perfect opportunity to do so.

GENTRY LOCKE
Attorneys

ROANOKE, VIRGINIA

9

50.     Defendant's Incident Report claims that Defendant "attempted to hand cuff Barricks and he moved forward in what [Defendant] perceived as an attempt to flee from handcuffing."

51.     Defendant's claims are pure fiction—Defendant did not attempt to handcuff Mr. Barricks at that point in time, and Mr. Barricks did not move forward or attempt to flee from handcuffing. Defendant's claims are clearly refuted by the video footage of the beating.

52.     Despite Mr. Barricks's obvious signs of surrender, Defendant slammed Mr. Barricks's body to the hard, concrete floor.



53.     After Mr. Barricks was slammed to the concrete floor, Defendant violently pushed Mr. Barricks's skull into the floor.



54.     After pushing Mr. Barricks's head into the floor, Defendant balled his fist and began punching Mr. Barricks in the face.



55.     Defendant did not stop after the first blow. Defendant continued to repeatedly punch Mr. Barricks in the face.

56.     Defendant struck Mr. Barricks in the head *at least twelve times*.

57.     Defendant did not tell Mr. Barricks that he was under arrest until *after* Defendant had nearly beaten Mr. Barricks to death.

58.     Defendant did not reach for his handcuffs until *after* beating Mr. Barricks.

59.     Upon information and belief, Defendant did not know that the surveillance camera was recording his barbaric acts.

60.     After Defendant slammed Mr. Barricks to the floor, pushed his face into the ground, and punched him at least twelve times, eyewitnesses began recording the incident with mobile devices.



61.     Upon information and belief, Defendant knew that the eyewitnesses had begun recording the incident.

62.     Defendant did not punch Mr. Barricks after the eyewitnesses started recording the incident.

63.     A video taken by an eyewitness shows Mr. Barricks in severe distress. Mr. Barricks can be heard grunting, groaning, and moaning as a result of Defendant's brutality.

64.     In the eyewitness's video, a woman can be heard asking, "Why is he under arrest?" Defendant responded by stating, "public intoxication." The woman then says, "He's not intoxicated, he's sober."

65.     In a second eyewitness's video, a man can be heard saying, "He didn't even do anything." The woman shouts at Defendant, "You need to go back to class, dude." The man says to Defendant, "He ain't done nothing wrong . . . nothing wrong . . . I hope that body cam is on too." Defendant replied to the man, "It is on!" A second man says, "he hit the hell out of that dude." The woman says, "He's covered in blood."

66.     Due to Defendant's beating of Mr. Barricks, his face and shirt were covered in blood.





GENTRY LOCKE
Attorneys
ROANOKE, VIRGINIA

20662/1/11513568v1

67.     Defendant charged Mr. Barricks with public intoxication in violation of Virginia Code § 18.2-388 and playing in the street in violation of Virginia Code § 46.2-932.

68.     On August 8, 2022, the Alleghany County General District Court entered a *nolle prosequi* disposition of the public intoxication and playing in the street charges.

69.     Mr. Barricks pleaded guilty to a violation of Virginia Code § 18.2-460. Mr. Barricks did not contest the fact that he initially ran from the police, which occurred ***before*** Defendant's egregious conduct took place.

70.     At the time of Defendant's beating of Mr. Barricks, Mr. Barricks was not fleeing from the police. He was attempting to surrender to police custody.

71.     Mr. Barricks was not posing a danger to Defendant or others in any way.

72.     Mr. Barricks was not armed and did not possess any weapons.

73.     At no point during the incident did Mr. Barricks attempt to seize a weapon from Defendant.

74.     Mr. Barricks never intentionally hit Defendant. All of Mr. Barricks's physical contact with Defendant was a natural reaction to and a result of Defendant's abuse.

75.     As a direct and proximate result of Defendant's beating, Mr. Barricks suffered severe injuries.

76.     After the beating, Mr. Barricks was emergently transported to the emergency room of LewisGale Alleghany Hospital.

77.     Mr. Barricks's injuries were so severe that LewisGale Alleghany Hospital could not provide the level of care that he needed.

78.     LewisGale planned to have Mr. Barricks flown via helicopter to Carilion Roanoke Memorial Hospital so he could receive a higher level of care, but the weather did not permit the helicopter flight.

GENTRY LOCKE
Attorneys
ROANOKE, VIRGINIA

20662/1/11513568v1

79.     Mr. Barricks was transferred to the emergency room of Carilion Roanoke Memorial Hospital via ambulance, where he was diagnosed with *at least* the following injuries that resulted from the beating:

      a.     Six millimeter acute frontal intraparenchymal hemorrhage;

      b.     Displaced fractures of the anterior and posterior walls of the right maxillary sinus;

      c.     Displaced fractures of the lateral and inferior wall of the right orbit;

      d.     Slightly displaced fracture through the angle/posterior body of the right mandible;

      e.     Displaced fracture of the left mandibular condyle; and

      f.     Head laceration.

**C.     Alleghany County Sheriff's Office's Use of Force Policies**

80.     At the time of the beating, Alleghany County Sheriff's Office's policies stated that "deadly force" includes "[a]ny force applied in any manner by any means that could reasonably be expected to cause death or great bodily harm." The policies further stated that "great bodily harm" includes "bodily injury which creates a substantial risk of death or which is likely to cause serious permanent disfigurement or loss, or extend impairment of the function of any body member or organ."

81.     At the time of the beating, Alleghany County Sheriff's Office's policies stated: "In Tennessee v. Garner, 105 S. Ct. 1694 (1985), the Supreme Court ruled that the use of deadly force to prevent the escape of a suspected criminal is unconstitutional if the suspect appears to be unarmed and not dangerous."

82.     At the time of the beating, Mr. Barricks did not appear to be armed and dangerous to Defendant.

83.     At the time of the beating, Alleghany County Sheriff's Office's policies stated that "[t]he department expects that officers will only employ the minimum force necessary to accomplish a legal purpose."

84.     At the time of the beating, Alleghany County Sheriff's Office's policies stated that "[i]t should be remembered with regard to civil and criminal liability that Virginia State Code permits a person to lawfully resist an unlawful arrest and/or unnecessary force."

85.     At the time of the beating, Alleghany County Sheriff's Office's policies stated the following regarding excessive force:

F.  Excessive Force
   1.  Force is excessive when its application is inappropriate to the circumstances, resulting in serious injury or death to a suspect. No objective definition of excessive force can be offered: each situation must be evaluated according to circumstances.
      a.  As a guide, King v. Blankenship, 636 F. 2d 70 (4th Circuit, 1980) set forth for consideration in determining whether force was excessive:
         i.   Need for the application of force
         ii.  Relationship between the need and the amount of force that was used
         iii. Extend of injury inflicted
         iv.  Whether the force was applied in a good faith effort to maintain and restore order or maliciously for the purpose of causing harm

86.     Upon information and belief, Defendant reviewed and knew about Alleghany County Sheriff's Office's policies outlined above before the brutal beating took place.

87.     Alleghany County Sheriff's Office's policies state that "where the use of force is unlawful, the Sheriff's Office will actively pursue criminal prosecution."

88.     Upon information and belief, the Alleghany County Sheriff's Office has not taken any steps to pursue criminal prosecution of Defendant.

GENTRY LOCKE
Attorneys

ROANOKE, VIRGINIA

17

20662/1/11513568v1

89.     Upon information and belief, Defendant remains in law enforcement and now works for the Virginia State Police.

## V.     Causes of Action

### COUNT ONE
### Excessive Force in Violation of 42 U.S.C. § 1983
*Defendant James R. Wright*

90.     Mr. Barricks incorporates by reference each preceding and succeeding paragraph as if fully set forth herein.

91.     Defendant's acts and omissions were conducted within the scope of his duties and employment as a deputy of the Alleghany County Sheriff's Office under color of state law.

92.     Defendant deprived Mr. Barricks of a federal constitutional or statutory right by using excessive and extreme force to detain Mr. Barricks in violation of the Fourth Amendment's prohibition against unreasonable seizures as incorporated against the states by the Fourteenth Amendment.

93.     The nature and quality of Defendant's intrusion on Mr. Barricks's Fourth Amendment interests was extremely outrageous and unreasonable in light of the minimal governmental interest in policing public intoxication.

94.     Public intoxication is not a serious or violent crime under Virginia law. Public intoxication is a Class 4 misdemeanor, which is punishable by a maximum fine of $250. Virginia Code §§ 18.2-388, 18.2-11(d).

95.     The governmental interest in policing public intoxication does not justify slamming a surrendering suspect's body to the floor, pushing his head to the ground, and punching him in the head at least twelve times.

96.     By brutally beating Mr. Barricks after he surrendered, Defendant violated clearly established law of which an objectively reasonable officer would have known.

GENTRY LOCKE
Attorneys
ROANOKE, VIRGINIA

18

97.     The state of the law at the time of the beating provided a fair warning to Defendant that his conduct was unconstitutional.

98.     Before Defendant's beating of Mr. Barricks, it was clearly established that it is unconstitutional to use excessive force to detain a suspect. An objectively reasonable officer would have known this.

99.     Before Defendant's beating of Mr. Barricks, it was clearly established that beating an unarmed suspect multiple times on the face and head while he is lying down and not resisting arrest constitutes excessive force. An objectively reasonable officer would have known this.

100.    Defendant's beating of Mr. Barricks, after he surrendered, constituted excessive force.

101.    Before Defendant's beating of Mr. Barricks, it was clearly established that it is unconstitutional to use deadly force to prevent the escape of a suspect where the officer does not have any reason to believe that the suspect poses a threat of serious physical harm to the officer or others. An objectively reasonable officer would have known this.

102.    Slamming a person's body to the floor, pushing his head into the concrete, and punching him in the head at least twelve times constitutes deadly force.

103.    At the time of the beating, Mr. Barricks was not actively resisting arrest or attempting to escape police custody.

104.    At the time of the beating, Defendant did not have any reason to believe that Mr. Barricks posed a threat of serious physical harm to the officer or others. Mr. Barricks was unarmed and never threatened Defendant or anyone else.

105.    Defendant's use of extreme force was not proportional to the severity of the crime at issue and especially was not proportional given that it occurred after Mr. Barricks had surrendered and had stopped attempting to evade arrest.

GENTRY LOCKE
Attorneys
ROANOKE, VIRGINIA

20662/1/11513568v1

106.   Defendant's purposeful beating of Mr. Barricks was objectively unreasonable in light of the circumstances.

107.   Defendant's horrific acts show that he did not make an effort to limit the amount of force he used to detain Mr. Barricks, who was merely a skateboarding and public intoxication suspect.

108.   It was completely unnecessary for Defendant to slam Mr. Barricks to the floor, push his head into the concrete, and punch him in the face at least twelve times.

109.   Defendant's unlawful beating of Mr. Barricks demonstrates that he was plainly incompetent and knowingly violated the law.

110.   Defendant's beating of Mr. Barricks illustrates that he was motivated by evil motive or intent.

111.   Defendant's beating of Mr. Barricks shows that Defendant was recklessly or callously indifferent to Mr. Barricks's federally protected rights.

112.   As a direct and proximate result of Defendant's excessive force, Mr. Barricks suffered debilitating injuries.

## COUNT TWO
### Battery
*Defendant James R. Wright*

113.   Mr. Barricks incorporates by reference each preceding and succeeding paragraph as if fully set forth herein.

114.   Defendant's slamming of Mr. Barricks's body to the floor, pushing his face into the concrete, and punching him in the face at least twelve times constituted intentional, unlawful, and harmful touchings.

115.   Mr. Barricks did not want to be beaten by Defendant.

116.   Mr. Barricks did not consent to the beating.

117.   Defendant's beating of Mr. Barricks was without legal justification or excuse.

118.   Defendant's beating of Mr. Barricks was not in self-defense.

119.   Defendant's beating of Mr. Barricks demonstrates that Defendant acted with actual malice toward Mr. Barricks and acted under circumstances amounting to a willful and wanton disregard of Mr. Barricks's rights.

120.   As a direct and proximate result of Defendant's batteries, Mr. Barricks suffered debilitating injuries.

## VI.    Prayer for Relief

WHEREFORE, the Plaintiff, Joshua L. Barricks, requests this Court to grant judgment in his favor and against the Defendant, James R. Wright, as follows:

A.     Compensatory damages in the amount of FIVE MILLION DOLLARS ($5,000,000), or in such greater amount to be determined at trial;

B.     Punitive damages in an amount to be determined by the jury (in connection with both claims);

C.     Attorney's fees (in connection with the federal civil rights claim);

D.     Pre-judgment interest on all amounts from March 30, 2022;

E.     Post-judgment interest on all amounts;

F.     Plaintiff's costs incurred; and

G.     Such other and further relief that the Court may deem appropriate.

## PLAINTIFF DEMANDS A JURY TRIAL ON ALL ISSUES.

**JOSHUA L. BARRICKS**

By:   */s/ Jared A. Tuck*
                Of Counsel

GENTRY LOCKE
Attorneys
ROANOKE, VIRGINIA

21

20662/1/11513568v1

Matthew W. Broughton (VSB No. 25226)
E. Scott Austin (VSB No. 41260)
Jared A. Tuck (VSB No. 98429)
GENTRY LOCKE
10 Franklin Road S.E., Suite 900
P.O. Box 40013
Roanoke, Virginia 24022-0013
Phone: (540) 983-9300
Fax: (540) 983-9400
broughton@gentrylocke.com
saustin@gentrylocke.com
jtuck@gentrylocke.com

*Counsel for Plaintiff*

GENTRY LOCKE
Attorneys
ROANOKE, VIRGINIA

22